# EDWARD THOMPSON COMPANY v. PETER F. SCHROEDER.[1]

November 12, 1915.

Nos. 19,419—(83).

**Rescission of contract for fraud.**

1. Evidence *held* to sustain the right of defendant to rescind a contract for the purchase of certain law books on the ground of fraudulent representations of plaintiff's agent, made to induce defendant to enter into the contract.

**Same — evidence of fraud.**

2. A clause in a written contract in the language: "No representations or guaranties have been made by the salesman on your behalf which are not herein expressed," does not preclude or estop the other contracting party from showing that the contract was procured by the fraudulent representations.

**Same.**

3. When by a fraudulently procured contract a pecuniary obligation is thereby incurred by the defrauded party, such incurred obligation is a sufficient damage or prejudice to entitle him to rescind the contract for the fraud.

Action in the district court for Becker county to recover $162 upon a written contract. The defense is stated in the first paragraph of the opinion. The case was tried before Roeser, J., who when plaintiff rested denied defendant's motion to dismiss the action and plaintiff's motion for judgment on the pleadings, and a jury which returned a verdict for eight dollars. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Edwin Adams* and *Taylor Crum,* for appellant.

*Peter F. Schroeder,* pro se.

BROWN, C. J.

The short facts in this case are that on September 24, 1912, defendant, an attorney and counselor at law residing in Becker county, this

1 Reported in 154 N. W. 792.

state, gave to a traveling representative of plaintiff a written order for certain law books published by plaintiff, namely, the Federal Annotated Statutes, and a set of the American and English Annotated Cases, for which defendant agreed to pay at the time and in the manner stated in the order. The order was subject to the approval of plaintiff, at its home office in New York, was subsequently so approved, and the books shipped to defendant. Having failed to pay for the Annotated Reports, this action was brought to recover upon the contract. Defendant interposed in defense that, as to that set of books, the order was procured by fraudulent representations of the plaintiff's agent, and that, upon discovery of the alleged fraud, defendant promptly rescinded the contract, and informed plaintiff that the books were held subject to its order. The validity of the contract as to the Federal Statutes was not questioned. Defendant had a verdict and plaintiff appealed from an order denying its alternative motion for judgment or a new trial.

1. It is contended by plaintiff that the evidence and facts relied upon by defendant in support of the claim that the order for the books was procured by fraud, are insufficient in law to defeat the contract, and that the court erred in not directing a verdict for plaintiff. The contention is not sustained. It appears from the evidence, and there is no controversy about the facts, that the representative of plaintiff called upon defendant at his office in Detroit, this state, a city of between two and three thousand people, and solicited an order for the books mentioned. Defendant inquired whether the Annotated Cases had been or were to be sold to any other attorneys at Detroit, stating that it was not the custom at the place for attorneys to duplicate in the purchase of law books, and, if an order had been placed with either of the other attorneys, or a sale was to be made to them, he, defendant, did not care to make the purchase of this set of books. The agent assured him and represented that no sale was to be or had been made to the other attorneys, and that, if defendant would make the purchase, he would have the only set of the books in town. Defendant's purpose was to avoid a duplication of law books in the libraries of the different attorneys, and in giving the order he relied upon the statements and representations of plaintiff's agent. The representations were not true. Other sets of the same books had previously been sold to other attorneys of the place, of which defendant at the time

was wholly uninformed. In this situation defendant gave the order for the books. They were shipped to him in compliance with the order and defendant received them in due time. He soon thereafter discovered and learned the fact of prior sales to other attorneys, and promptly rescinded the contract and notified plaintiff that the books were held subject to its order. Defendant has at all times since refused to make payment on the purchase price, though he has made the required payments for the Federal Statutes. There is no dispute in the evidence. That submitted by defendant responded to the allegations of his answer, and plaintiff offered no evidence to contradict that given by defendant.

On these facts we have no particular difficulty in holding that the representations were material, that defendant had the right to rely thereon, and, since they were not true, there was a sufficient basis for the rescission of the contract. It is a common practice among attorneys in the smaller communities of the state, to so shape their purchases of law books, particularly reports, as to avoid a duplication of such books in the different law offices, to the end that the combined libraries of all the lawyers will furnish the members of the bar with ready reference to a larger number of reports than individual members can well afford to purchase. There would seem nothing out of reason in this, and when an agent of a law publishing house is informed of the situation, as in the case at bar, and of the fact that an attorney does not care to make a particular purchase if a sale of the same books has been made to some other attorney of the place, a representation by him that no such sale has been made is of substantial materiality, and the falsity thereof justifies a rescission of the contract. The contract was divisible and defendant could repudiate as to the Annotated Reports. 5 R. C. L. p. 936, § 26, Bank of Antigo v. Union Trust Co. 23 L.R.A. 611 [149 Ill. 343, 36 N. E. 1029.]

2. The order given by defendant was in writing and contained the clause: "No representations or guaranties have been made by the salesman on your behalf which are not herein expressed." The writing makes no reference to the representations made the basis of the defense, and plaintiff contends: (1) That evidence of the representations was incompetent as varying the written contract; and (2) that the statement that no representations had been made by the salesman precludes defendant

from showing to the contrary. Neither contention can be sustained. It is well settled by our decisions that parol evidence of fraudulent representations, not concerning a substantive part of the contract, but made to induce a party to enter into the same, is admissible in evidence and has no tendency to vary the terms or provisions of the written contract. The purpose and effect of such evidence is to show that the contract was procured by fraud, not to change or modify the terms thereof, but to impeach its validity as a whole. Kerrick v. G. W. Van Dusen & Co. 32 Minn. 317, 20 N. W. 228; Vilett v. Moler, 82 Minn. 12, 84 N. W. 452. The point that defendant is precluded from showing the fraud by reason of the clause in the contract that no representations had been made except as stated in the contract is disposed of by the case of General Elec. Co. v. O'Connell, 118 Minn. 53, 136 N. W. 404, where Mr. Justice Philip E. Brown, speaking for the court, said:

"As to whether one who has, by fraud, been induced to execute a written contract, and to incorporate therein a statement that there are no other agreements or understandings between the parties, may recover damages therefor, we have no doubt whatever."

Such is the rule in this state and we discover no reason for departing therefrom. The clause of the contract stating that no representations have been made save as set forth in the writing should be construed to have reference to the subject matter of the contract and not to representations fraudulently made to induce and bring about its execution. If the contention made be sound, then it would follow logically that a written contract containing a clause "this contract was not procured by fraud," would equally estop a defrauded party and render valid the contract, however gross the fraud may have been. No authorities are cited in support of that view of the law. There was no negligence on the part of defendant in signing the order, and he had the right to rely upon the representations made to him. MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408.

3. The further point made by plaintiff that defendant wholly failed to show that he suffered any damage by the fraud is not well taken. By means of the fraud defendant was induced to incur pecuniary obligation to plaintiff, which otherwise he would not have incurred; he was entitled

to rescind the contract and thus relieve himself of that obligation, and it was not necessary that he further show that he had suffered some other pecuniary loss.   14 Am. & Eng. Enc. 140.

4. This covers all questions requiring special mention.   The answer stated a defense to the action, the evidence tending to establish the same was properly received, and there was no error in the instructions of the court.

Order affirmed.   —————————